UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIERON DEMORN SMITH,

        Plaintiff,

Case No. 1:09-cv-26

Hon. Robert J. Jonker

v.

CORRECTIONAL MEDICAL SERVICES,
INC., *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on motions for summary judgment filed by defendants Tamerla Hamilton, Holly Smyth, Charlotte Burdette, Mary Berghuis, Rick Smith and Michael Wilkinson (docket no. 19) and defendant Correctional Medical Services, Inc. ("CMS") (docket no. 27).

**I.**    **Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's complaint names the following defendants: CMS; Dr. Badawi Abdellatif; RN Tamerla Hamilton, RN Holly Smyth, Nurse Supervisor Charlotte Burdette, Warden Mary Berghuis, Deputy Warden Rick Smith; RN Michael Wilkinson; P.A. Nelson Spitter; Dr. Walter Finan and Health Unit Manager (HUM) Ed Hunt. *See* docket no. 1.[1]

Plaintiff's sets forth the following allegations in his complaint.

> On August 8, 2008, I woke from sleeping having heart problems. I immediately approached the officer's deck on first shift and made them aware of the way I was feeling. Officer Johnson asked me what was I experiencing. In detail I explained my symptoms as, heart racing and beating hard, having trouble breathing, having grayish-white vision, and being very drowsy. I was directed to inform health services by kite or at medication line time according to my daily schedule. Also that chow hall was called and that staff didn't have time to handle this, but could I tell the Lt. or Sgt. Upon entering health services I walked to the med line window and informed Nurse Hamilton of my problem. She responded, "Go to chow and return after you are done" and she walked back into a prisoner restricted area. I state to officer Dutra that I wasn't going to chow and she left to inform the medical staff that I was waiting. A few minutes later, Nurse Hamilton came into the lobby and stated, "Drink more water, because it sounds like your [sic] dehydrated and you should be okay." I sat down because I felt faint and I requested another nurse, because I was [losing] feeling in my left arm.

Compl. at ¶ IV.

A different nurse, RN Van Arsdale, reviewed plaintiff's symptoms, stated that everything seemed fine, but decided to have plaintiff undergo an EKG. A third nurse, RN Castenholz, tested plaintiff and advised Dr. Abdellatif of the results.[2] The doctor determined that plaintiff had atrial fibrillation and should go to the hospital. Plaintiff was admitted to Mercy Hospital on August 8th and his heartbeat returned to normal on August 9th. He returned to the prison "despite the medical finding of the hospital and the need for further treatment so the specialist

---

[1] The court notes that defendants Abdellatif, Spitter, Finan and Hunt have not been served with a summons and complaint in this matter.

[2] Plaintiff sometimes refers to Dr. Badawi Abdellatif as "Dr. Badawi."

2

could address the issue." Plaintiff "was seen by LRF medical staff upon returning to [the correctional facility], only to discuss what was stated by the doctor at Mercy."

Dr. Abdellatif examined plaintiff on August 11th and ordered aspirin to prevent blood clots. Plaintiff did not receive the aspirin until August 13th and filed a grievance "over these issues." He suffered from four "heart related attacks" in August 2008, but was told these were panic attacks or that he was dehydrated. On September 9th or 11th (it is unclear from the complaint), plaintiff had two "attacks" and was transported to a hospital. He was given a defibrillator treatment which resulted in a regular heartbeat. On September 10th he received medication (120 mg Diltiazem and 325 mg aspirins).

On September 12th, P.A. Spitters evaluated plaintiff but did not refer him to a specialist as suggested by the hospital doctors. Plaintiff had another "attack" in September and October. After the October attack, he was sent to the hospital in October and released. He was evaluated on October 7th by a specialist, at which time his aspirin was stopped and Diltiazem dosage reduced. He received a stress test and electrocardiogram and prescribed additional medication (cardizem and Rythmol SR). When plaintiff went to the med window on October 11th, Nurse Smyth could not find the new medications. When plaintiff went to the med line on October 12th, the duty nurse was not aware of the medications and told plaintiff to send a kite. Plaintiff filed a grievance that day.

On October 13th, plaintiff was placed on light duty detail until January 10, 2009, apparently due to the atrial fibrillation. The detail caused plaintiff to be terminated from his work detail. On October 17th, plaintiff spoke with Nurse Supervisor Burdette and had the detail removed. However, plaintiff was not allowed to return to work, and filed a grievance on the matter. While

3

meeting with Nurse Supervisor Burdette, plaintiff discussed the grievance for the medications, at which time she informed plaintiff of the process for approving medication. Plaintiff demands $12,000,000.00 for compensatory damages, $15,000,000.00 for punitive damages, "an unspecified amount to be placed in escrow account for proper medical treatment upon release," and "proper medical care by a qualified specialist" while incarcerated.

### III. Motions for Summary Judgment

### A. Legal Standard

Defendants RN Hamilton, RN Smyth, RN Burdette, Warden Berghuis, Deputy Warden Smith, RN Wilkinson and CMS have moved for summary judgment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

4

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Failure to exhaust administrative remedies

Defendants CMS, RN Smyth, Nurse Supervisor Burdette, and RN Wilkinson seek summary judgment for lack of exhaustion.[3] The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The Michigan Department of Corrections (MDOC) requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive 03.02.130. A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form

---

[3] In an apparent response to this motion, plaintiff has moved to voluntarily dismiss CMS, RN Smyth, Nurse Supervisor Burdette, RN Wilkinson, and HUM Hunt. *See* docket no. 43. Plaintiff's motion, however, is not presently before the court.

within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

These defendants have presented a copy of a "Grievance Inquiry" printout, dated May 26, 2009, which reflects that plaintiff exhausted one grievance during the time period at issue in this action. *See* docket no. 20-4. That grievance, LRF 080800843112d1, dated August 11, 2008, grieves plaintiff's condition on August 9th and 10th, 2008, complaining that he was returned from Mercy Hospital without a thorough examination "nor a solution to the problem" in violation of his Eighth Amendment rights. *See* docket no. 20-5. The grievance names Warden Berghuis, Deputy Warden Rick Smith, RN Hamilton, P.A. Spitters, Dr. Finan and Dr. "Badawinabdellatif" [sic]. *Id.* The grievance does not name defendants CMS, RN Smyth, RN Burdette or RN Wilkinson as required by PD 03.02.130 ¶ R. Plaintiff acknowledged this defect in his motion to dismiss these defendants. Because plaintiff did not name these defendants in the grievance, he has failed to properly exhaust

6

this grievance as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

Accordingly, the motions for summary judgment filed by CMS, RN Smyth, Nurse Supervisor Burdette and RN Wilkinson should be granted.

**C.    Eighth Amendment claim**

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9. As one court observed, "[t]he Constitution decidedly does not require states to make prisons comfortable, and a

7

prison sentence is not a voucher for free health care on demand." *Lee v. Beard*, No. 4:CV-03-1026, 2008 WL 744736 at *8 (M.D. Pa. March 18, 2008).

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 1.     Warden Berghuis and Deputy Warden Smith

As an initial matter, plaintiff's complaint does not include any allegations against Warden Berghuis or Deputy Warden Smith. Plaintiff merely listed them as defendants on the caption. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). *See Rodriguez v. Jabe,* No. 90-1010, 1990 WL 82722 at *1 (6th Cir. Jun 19, 1990) (district court correctly dismissed *pro se* prisoner's complaint against two members of the prison medical staff, concluding that "[p]laintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *Webb v. Caruso*, No. 1:06-cv-3,  2006 WL 416261 at *4 (W.D. Mich. Feb. 22, 2006) ("[w]here a person is named as a

8

defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints"); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich 1991) (citing *Potter* as one basis for dismissal of *pro se* complaint where the only mention of the defendants' names was in the caption of the complaint).

Furthermore, plaintiff cannot maintain an action against these defendants because they supervised other employees at the correctional facility. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A supervisor's liability "must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Accordingly, Warden Berghuis and Deputy Warden Smith are entitled to summary judgment.

### 2. RN Hamilton

Plaintiff has not clearly stated a claim against RN Hamilton. It appears that plaintiff claims that RN Hamilton failed to resolve his heart problem on August 8th, before he went to the hospital. Plaintiff also alleged that the correctional facility staff did not provide him with any additional information after he returned from the hospital on August 9th and 10th. Since RN

9

Hamilton examined plaintiff after his hospital visit, the court will construe that examination as part of plaintiff's claim against RN Hamilton.

The court has reviewed 328 pages of plaintiff's medical records generated between August 4, 2008 and April 2, 2009. *See* docket no. 20-3. The records do not reflect any treatment by RN Hamilton on August 8th. Plaintiff was examined by RN Castenholz at 12:35 p.m. on that day, complaining of shortness of breath, racing heart, tightness across the chest and lightheadedness since he woke up and while working at his job in the food service. *Id.* at p. 7. Plaintiff attributed the symptoms to asthma, but did mention that he had a sharp pain in his chest the previous week that resolved itself. *Id.* His condition was brought to the attention of a medical provider and an EKG was performed. *Id.* Dr. Abdellatif noted that plaintiff had an irregular heart rate and possible AF (atrial fibrillation) with shortness of breath, and sent plaintiff to the emergency room for evaluation. *Id.* at pp. 7, 9.

RN Hamilton examined plaintiff on August 9th, after he returned from the hospital. *Id.* at p. 11. At that time, plaintiff was not suffering from any symptoms. *Id.* The progress note reflects that during this examination, RN Hamilton educated plaintiff on his condition, suggested that he decrease or quit smoking, and advised plaintiff to contact the health service if he had symptoms. *Id.* Plaintiff's medication was changed to include a 325 mg aspirin as recommended by the hospital and he was advised that he would be called out on the next day for an examination. *Id.* On August 10th, plaintiff was examined by RN Vander Velden, at which time plaintiff denied any symptoms since returning from the hospital. *Id.* at p. 12. On August 11th, Dr. Abdellatif noted that plaintiff's atrial fibrillation "converted on its own" while he was at the hospital. *Id.* at p. 14. On

August 13th, Dr. Abdellatif reviewed plaintiff's hospital lab results and noted that if the atrial fibrillation recurred, plaintiff would need a cardiology consult. *Id.* at pp. 16-17.

Viewing the evidence in the light most favorable to plaintiff, the court concludes that RN Hamilton's actions did not rise to the level of an Eighth Amendment violation. With respect to plaintiff's claim arising on August 8th, assuming that RN Hamilton believed that plaintiff was dehydrated, she did not ignore his condition. Rather, she advised him to eat and drink water before returning to the med line. At most, RN Hamilton misdiagnosed plaintiff's condition and deferred his examination for a short period of time. A prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Even if plaintiff's medical treatment was deficient in some manner, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06. *See generally, Westlake v. Lucas*, 537 F.2d 857, 860 at n. 5 (6th Cir. 1976) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

Plaintiff's other claim arises from his interaction with RN Hamilton on August 9th, when the nurse examined plaintiff upon his return from the hospital. At that time, RN Hamilton noted the hospital's recommendation for a daily aspirin, educated plaintiff on his condition and scheduled a follow-up visit with a doctor. This brief interaction between RN Hamilton and plaintiff did not amount to deliberate indifference. Plaintiff had no symptoms when he saw RN Hamilton.

11

It is undisputed that the atrial fibrillation that prompted plaintiff's hospital visit had resolved itself before the examination. The decision to refer plaintiff to a cardiologist was addressed by Dr. Abdellatif (not RN Hamilton) after the doctor reviewed plaintiff's lab results from the hospital. *See* docket no. 20-3 at pp. 16-17. There is no evidence that RN Hamilton violated plaintiff's constitutional rights during the follow up examination. Accordingly, RN Hamilton is entitled to summary judgment.

### IV.     Recommendation

For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by defendants RN Hamilton, RN Smyth, Nurse Supervisor Burdette, Warden Berghuis, Deputy Warden Smith and RN Wilkinson (docket no. 19) and defendant CMS (docket no. 27) be **GRANTED**.


Dated: February 8, 2010                                /s/ Hugh W. Brenneman, Jr.
                                                       HUGH W. BRENNEMAN, JR.
                                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).